# EXHIBIT
# B

# OVERRIDING ROYALTY AGREEMENT

**THIS OVERRIDING ROYALTY AGREEMENT** (the "<u>Agreement</u>") dated the 11th day of March, 2013 is by and between (i) **TAMS MANAGEMENT, INC.**, a West Virginia corporation, ("<u>Tams</u>"); and (ii) **THOMAS K. LAMPERT IRREVOCABLE TRUST**, dated January 9, 2012 and established under the laws of the Commonwealth of Pennsylvania ("<u>Trust</u>"). Throughout this Agreement, Tams and Trust are sometimes individually referred to as a "<u>Party</u>" and sometimes collectively referred to as the "<u>Parties</u>".

## Recitals

**WHEREAS**, Newgate Development of Beckley, LLC, a West Virginia limited liability company, ("<u>Newgate</u>"), is currently developing a coal mining reserve (the "<u>Three Marie Mine</u>") located on, in and under lands owned by Beaver Coal Company, Limited, a Pennsylvania limited partnership, ("<u>Beaver</u>"), near and north of the Town of Ury, situated and being in Slab Fork District, Raleigh County, West Virginia, and containing by estimation some two thousand (2,000) acres, more or less, (the "<u>Premises</u>");

**WHEREAS**, in connection with its current development the Three Marie Mine in, on and under the Premises, Newgate has obtained two governmental authorizations from the State of West Virginia, Department of Environmental Protection to conduct coal mining operations on the Premises: (i) WV1026488, and (ii) S-301411 (collectively and, along with any renewals, extensions, additions, subtractions, and/or modifications, the "<u>Permits</u>");

**WHEREAS**, Tams desires to acquire all of the Membership Interests of Newgate "<u>Newgate Interests</u>") from the Trust so that it may utilize the coal reserves of the Three Marie Mine in its existing production, and so that it may utilize the Premises for its existing operations adjacent to or in close proximity to Premises;

**WHEREAS**, the Trust desires to sell the Newgate Interests to Tams, subject to the terms and conditions of that certain Membership Interest Purchase Agreement dated on an even date herewith (the "<u>Purchase Agreement</u>") by and among the Trust and Tams; and

**WHEREAS**, pursuant to Section 3(a)(iii) of the Purchase Agreement, Tams is to pay to the Trust an overriding royalty on all merchantable and mineable tons mined in, on, and/or under the Premises by Tams, or any affiliate thereof, after the date hereof.

**NOW, THEREFORE**, as consideration for the Newgate Interests, and other good and valuable consideration, the receipt and sufficiency is hereby acknowledged, the Parties agree as follows:

1. **Calculation of Override.** Tams agrees to pay to the Trust an overriding royalty (the "Overriding Royalty") in an amount equal to

    (a) Four Dollars ($4.00) for each ton of the first Five Hundred Thousand (500,000) tons of coal mined and sold from the Premises ("Initial Royalty Amount"); and

    (b) One Dollar ($1.00) for each ton of coal in excess of the first Five Hundred Thousand (500,000) tons of coal mined and sold from the Premises ("Primary Royalty Amount").

2. **Payment of Override.** Tams shall pay the Overriding Royalty to the Trust on or before the 25th day of each calendar month on all coal mined and sold from the Premises during the immediately preceding calendar month. Tams shall pay all payments by check payable to the Trust, or such other means as expressly approved by the Trust. Each payment of Overriding Royalty hereunder shall be accompanied by a statement from Tams showing the number of tons of coal mined and sold during the immediately preceding calendar month and the computation of the Overriding Royalty payable on such coal so mined and sold during such month. Tams shall mail the check and accompanying royalty statement to the Trust at the address listed herein, or as otherwise expressly directed by the Trust from time to time.

3. **Acceleration.** Tams hereby acknowledges that its obligations under this Agreement shall accelerate upon the occurrence of any of the following acts or omissions, and subject to the following terms and conditions:

    (a) *Acceleration of Initial Royalty Amount.* Tams shall promptly pay Two Million Dollars ($2,000,000.00) in one lump sum payment, in lieu of the Initial Royalty Amount, to the Trust ("Accelerated Royalty Payment I") in the event that one or more of the following acts or omissions occur:

        (i) Tams does not satisfy the Purchaser Permit Approval Obligation (as defined under the Purchase Agreement) within ninety (90) days hereof;

        (ii) Tams, or its successor or assign, does not require its successor or assign to assume the obligations of this Agreement pursuant to Section 5 hereof; or

        (iii) An event of default occurs under that certain Lease dated February 1, 2011 by and between Beaver and Newgate, as amended, assigned, or otherwise modified (the "Newgate Lease").

(b) *Acceleration of Primary Royalty Amount*. Tams shall promptly pay Three Hundred Thousand Dollars ($300,000.00) in one lump sum payment, in lieu of the Primary Royalty Amount, to the Trust ("Accelerated Royalty Payment II" and, together with the Accelerated Royalty Payment I, the "Accelerated Royalty Payments") in the event that one or more of the following acts or omissions occur:

(i) an event of default occurs under the Newgate Lease; or

(ii) Tams, or its successor or assign, does not require its successor or assign to assume the obligations of this Agreement pursuant to Section 5 hereof.

provided, however, in the event that the Accelerated Royalty Payments become due and payable by Tams after coal mining has commenced on the Premises, Tams may reduce the Accelerated Royalty Payment I or the Accelerated Royalty Payment II by the amount of Initial Royalty Amount or Primary Royalty Amount paid prior to the Accelerated Royalty Payments coming due.

4. **Term.** This Agreement shall take effect upon execution hereof and shall continue until exhaustion of all mineable and merchantable coal from the Premises.

5. **Covenant Running With Land.** The Parties agree that the Override shall constitute an independent and enforceable obligation that is intended to run with the Premises. In the event that Tams desires to assign all or part of its obligations under this Agreement, Tams shall require its successors and assigns to assume its obligations under this Agreement.

6. **Inspection and Records.** Tams or any affiliate thereof shall keep true and accurate records of all coal mined and subsequently sold from Three Marie Mine, and Tams or any affiliate thereof shall keep true and accurate records of all royalties paid to the Trust under this Agreement. Trust, or his authorized agent, shall have the right to inspect, at a reasonable time and location, the books and records of Tams or any affiliate thereof as they pertain directly to this Agreement. Trust, or his authorized agent, covenant and agree to keep all such information strictly confidential, and shall not disclose any such information to third parties except pursuant to valid court order. Trust, its Trustee, engineers or other persons acting on its behalf shall have the right to enter at all reasonable times the mines, surface or underground, on the Leased Premises in order to inspect, examine, survey or measure the same or any part theron, or for any other lawful purpose, and for these purposes to use freely the means of access to the said mines without hindrance or molestation.

7. **Miscellaneous Provisions.**

(a) *Defined Terms.* Any capitalized term used, but not defined herein, shall have the meaning assigned to it in the Purchase Agreement.

(b) *Notices.* All notices and other communications with respect to this Agreement shall be in writing and shall be deemed effectively given when delivered by certified mail, postage prepaid, or overnight mail to the addresses provided below:

If to Trust:  THOMAS K. LAMPERT IRREVOCABLE TRUST
114 Bremen Lane
McMurray, Pennsylvania 15317
Attention: Thomas K. Lampert, Trustee

With a copy to:

JONES & ASSOCIATES
P.O. Box 1989
Charleston, West Virginia 25327
Attention: E. Forrest Jones, Jr., Esq.

If to Tams:  TAMS Management, Inc.
302 S. Jefferson Street
Roanoke, Virginia 24011
Attention: James C. Justice, III

With a copy to:

JUSTICE COMPANIES
302 S. Jefferson Street
Roanoke, Virginia 24011
Attention: Steve Ball

(c) *Complete Understanding.* The Parties hereby acknowledge that the terms and conditions of (i) this Agreement, (ii) the Purchase Agreement, and (ii) the other agreements expressly referred to in the Purchase Agreement (collectively, (i)-(iii) are referred to as the "Transaction Documents") represent the complete understanding between the Parties with respect to the subject matter hereof, and that the terms and conditions of the Transaction Documents supersede all prior negotiations, representations, guarantees, warranties, promises, statements or agreements, either written or oral, between the Parties as to the same.

(d) *Amendment.* This Agreement may be amended only by an instrument executed and delivered by each Party.

(e) *Waiver.* No Party shall be deemed to have waived any right which it holds hereunder unless the waiver is made expressly and in writing (and, without limiting the generality of the foregoing, no delay or omission by any party in exercising any such right shall be deemed a waiver of its future exercise). No waiver shall be deemed a waiver as to any other instance or any other right.

(f) *Recording.* Tams acknowledges and agrees that the Trust may record a memorandum of this Agreement in a form substantially similar to the form attached hereto as Exhibit A.

(g) *Applicable Law.* This Agreement shall be governed by, and construed in accordance with, the laws of the State of West Virginia without regard to its conflict of laws rules.

(h) *Prohibition on Assignment.* This Agreement shall be binding upon, and shall inure to the benefit of, the Parties and their respective executors, administrators, heirs, successors, and assigns. Without limiting the generality of the foregoing, neither this Agreement nor any part hereof may be assigned without the prior written consent of all of the Parties.

(i) *Severability.* No determination by any court, governmental body, or otherwise that any provision of this Agreement or any amendment hereof is invalid or unenforceable in any instance shall affect the validity or enforceability of (a) any other provision thereof, or (b) that provision in any circumstance not controlled by the determination. Each such provision shall be valid and enforceable to the fullest extent allowed by, and shall be construed wherever possible as being consistent with, applicable law.

(j) *Further Assurances.* The Parties shall cooperate with each other and shall execute and deliver, or cause to be delivered, all other instruments and shall take all other actions, as either Party hereto may reasonably request from time to time in order to effectuate the provisions hereof.

(k) *Counterparts; Facsimile.* This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. This Agreement may be executed and delivered via facsimile, with a copy sent to each Party.

(l)     *Cross-Default.*  A default by Tams under the terms and conditions of this Agreement shall also be and constitute a default under the terms and conditions of the Purchase Agreement and the Commercial Pledge Agreement.

*[Signatures follow on the next page]*

IN WITNESS WHEREOF, the duly-authorized representatives of the Parties have executed this Agreement as of the date set forth above.

**THOMAS K. LAMPERT IRREVOCABLE TRUST DATED JANUARY 9, 2012,**
an irrevocable trust established under the laws of the Commonwealth of Pennsylvania,

By: *[signature]*
Name: Thomas K. Lampert
Its: Trustee

**TAMS MANAGEMENT, INC.,**
a West Virginia corporation,

By: *[signature]*
Name: James C. Justice, III
Its: *EVP*

## Notary Acknowledgement of Thomas K. Lampert Irrevocable Trust

STATE OF West Virginia

COUNTY OF Kanawha

The foregoing instrument was acknowledged before me this 8th day of March, 2013 by Thomas K. Lampert, as Trustee of the Thomas K. Lampert Irrevocable Trust dated January 9, 2012, an irrevocable trust established under the laws of the Commonwealth of Pennsylvania, for and on behalf of the aforesaid trust.

My commission expires: October 7, 2020.

OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
Joseph G. Bunn
1601 Connell Road
Charleston, WV 25314
My Commission Expires Oct. 7, 2020

Notary Public

## Notary Acknowledgement of TAMS Management, Inc.

STATE OF West Virginia

COUNTY OF Raleigh

The foregoing instrument was acknowledged before me this 14th day of March, 2013 by James C. Justice, III, as EVP of TAMS Management, Inc., a West Virginia corporation, for and on behalf of the aforesaid corporation.

My commission expires: 8/21/20.

OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
LESLIE WELLS
366 MAPLE FORK ROAD
MT. HOPE, WV 25880
My commission expires August 21, 2020

Notary Public