IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

THOMAS K. LAMPERT, as Trustee
for the THOMAS K. LAMPERT
IRREVOCABLE TRUST,

    Plaintiff,                                           Civil Action No. 5:15-cv-6746

v.

TAMS MANAGEMENT, INC.,
SOUTHERN COAL CORPORATION,

    Defendants.

**Response in Opposition to**
**<u>Defendants' Motion for Summary Judgment</u>**

      The sophisticated contracting parties in this case purposely negotiated the terms of an initial royalty of $4.00 per ton on the first 500,000 tons of coal: If the mining permits were transferred promptly, the royalty would be paid as the coal was mined. *See* ECF No. 1-2, at ¶1(a) (the "Initial Royalty Amount"). If the mining permits were not transferred within a specified time, the royalty would be prepaid and the buyer would receive credit against future coal production. *See id.* at ¶3(a) (the "Accelerated Royalty Payment"). They also agreed that time was of the essence regarding the permit transfers, and that failing to timely transfer the mining permits would be a material event of default. *See* ECF No. 1-1, at ¶2.05(a).

      When a party agrees to prepay a mineral royalty, that party assumes the risk that extraction will be delayed or may not occur. By challenging their prepayment obligation, the Defendants are asking the Court not only to relieve them of the business risk which they assumed through negotiations, but to set aside controlling precedent on the matter of prepaid royalties. The Accelerated Royalty Payment imposes no penalty. Rather, it changes the timing of the

Defendants' royalty obligation and shifts future business risk to the Defendants. All that remains is for the Court to enforce the agreement that all parties reached.

### A. Accelerated Royalties are an Established Method of Risk Allocation

The Defendants would have this Court treat their royalty obligation as punitive liquidated damages. It is not. Like any prepaid royalty, the Accelerated Royalty Payment is an established method for contracting parties to allocate the business risk that future coal production might be delayed, or might not occur at all.

West Virginia has long recognized that where a party agrees to pay a royalty in advance of actual production, the producing party is deemed to assume the risk that extraction might be delayed, or might not occur at all. *See Orlandi v. Goodell*, 760 F.2d 78 (4th Cir. 1985). Where a party agrees to "pay certain specified sums *in advance* . . . [n]o relationship exists between the payment schedule and any given quantity of coal that might be mined." *Id*. at 81 (emphasis in original). In such cases, the party's payment obligation is "an absolute undertaking," and the party is "required to pay the royalty and taxes even though he never entered upon the land." *Id.* (internal quotation marks omitted) (*citing Lawson v. Williamson Coal & Coke Co*., 61 W.Va. 669, 57 S.E. 258 (1907)); *see also Babcock Coal & Coke Co. v. Brackens Creek Coal Land Co.*, 128 W. Va. 676, 683, 37 S.E.2d 519, 523 (1946) ("The lease clearly shows that the stipulation with reference to minimum royalty is one of hazard, and that plaintiff assumed the risk of the existence of coal to be mined from defendant's land sufficient in quantity to aggregate the total of minimum royalties for the term of the lease.").

This case involves experienced and sophisticated parties well acquainted with the methods for allocating risks in an industry racked with uncertainty. By agreeing to prepay its royalty under certain conditions, Tams Management agreed to bear the risk that economic and/or

regulatory conditions might never permit them to profitably mine coal on the property, or that the property might not contain coal at all. *See* ECF No. 1-1, at Art. IV(f) (property accepted as is, where is, free of any warranty regarding the mineability, washability, recoverability, mining rights, volume, location, quantity or quality of any of the coal reserves). Through their Summary Judgment Motion, the Defendants seek to modify the agreements and renegotiate their contractual obligations. The contracts are plain, clear, and support no alternative construction.

### B. All Parties Agreed that Time was of the Essence, Not Minor or Trivial

Defendants assert that their conduct constitutes a "minor or trivial breach." *Defs.' Br.*, ECF No. 21, at 5. Yet when they executed the contracts, the parties manifested their clear intent that "time shall be of the essence" regarding the Purchaser Permit Approval Obligation and that failing to obtain timely permit transfers "shall be a material event of default." ECF No. 1-1, at ¶2.05(a). Where contracting parties agree that time shall be of the essence, timely performance "'is so material that exact compliance with the terms of the contract in this respect is essential.'" *Waddy v. Riggleman*, 216 W. Va. 250, 264, 606 S.E.2d 222, 236 (2004) (quoting 15 Williston on Contracts § 46:2, at 395-97); *see also Creasy v. Tincher*, 154 W. Va. 18, 22, 173 S.E.2d 332, 334 (1970) ("Time is often made the essence of a contract and if the parties clearly so intend, by words or by action, *it will be so regarded*." (emphasis added)). There is nothing ambiguous about this agreement, and the Defendants cannot be permitted to reject their agreement now, simply because it suits them. *See Waddy*, 216 W. Va. 250, 606 S.E.2d 222, at Syl. Pt. 3 ("Where the terms of a contract are clear and unambiguous, they must be applied and not construed.").

### C. The Accelerated Royalty Payment is Not Punitive

Even if there were no agreement regarding timing, the Defendants identify no single case or other authority which supports treating a prepaid royalty as punitive liquidated damages. In

3

its *Orlandi* decision, the Fourth Circuit vacated a jury verdict, reversed, and remanded with instructions for the district court to enter judgment in favor of the recipient of a similar royalty. *See Orlandi*, 760 F.2d at 82. The Court acknowledged this result "may seem severe," but invoked controlling authority from the West Virginia Supreme Court:

> If a party to a contract could be relieved from performance on the ground that no profit would accrue from its performance, the stability and binding force of most, if not all, contracts would be destroyed. It is of frequent occurrence in the business world that a party to a contract finds that its performance is onerous and unprofitable; nevertheless, good faith and fair dealing call for performance. Equity will not grant rescission on the ground that mining is unprofitable.

*Id.* (quoting *Babcock*, 37 S.E.2d at 522). The Court observed "no reason why the parties should not be held to the clear terms of the contract they negotiated." *Id.* at 82. In *Orlandi*, it was not punitive to enforce a prepaid royalty even though the land never contained coal.

The Fourth Circuit was bolstered by the West Virginia Supreme Court's earlier decision in *Babcock*. *See* 128 W. Va. 676, 37 S.E.2d 519 (1946). There, the Court explained that when a buyer has "agreed in unqualified terms to pay a minimum sum rather than to mine a definite quantity of coal," the buyer is deemed to "assume[] the risk as to the existence of coal in sufficient quantity and of such quality and persistence to permit full and complete performance of the contract." *Id*. at 524. The *Babcock* Court heard no suggestion that the mandatory royalty might be punitive, and required the lessee to pay six years of minimum royalties though there was no more coal which could be profitably mined. *See also Flavelle v. Red Jacket Consol. Coal & Coke Co.*, 82 W. Va. 295, 96 S.E. 600, 605 (1918) ("No way of escaping the royalty payment seems to be open or available, for if a lessee covenants to . . . pay a definite royalty or rental, in the event he fails to do so and he is not exonerated therefrom by some other stipulation of the contract, he will generally be held to a strict performance of the covenant."). These decisions were grounded in an earlier case, now more than a century old, in which the Supreme Court of

4

Appeals explained that an agreement to prepay a mineral royalty is "an absolute undertaking to pay said sum." *Lawson v. Williamson Coal & Coke Co.*, Syllabus, 61 W. Va. 669, 57 S.E. 258 (1907).

State and federal courts have routinely and consistently enforced prepaid royalty agreements because they serve an important role in allocating business risks. Not once has a prepaid royalty been treated as punitive, even where there was no coal to be mined and no right to receive a credit against future production. These decisions control the outcome in this case, where the Defendants will receive credit for their payment if and when they produce coal.

Rather than address these controlling authorities on coal royalties, the Defendants' Motion instead invokes cases with little bearing on the issues at hand. First, the Defendants invoke a decision involving a contractor's failure to timely prepare a building site. In *Gateway Town Centre, LLC v. First United Bank and Trust*, the seller was contractually obligated to provide a "pad ready" construction site by a date certain or to pay $15,000 per month for any delay. *See* No. 1:09-cv-00127, 2011 WL 3877010 (N.D. W. Va. Sept. 2, 2011). The district court found no evidence that the seller's ten-month delay had affected the buyer's construction timeline, and so declined to enforce the liquidated damages clause. *See id*. Enforcing the liquidated damages clause in *Gateway* would have required the seller to pay a $150,000 penalty. Even if the parties in this case had not agreed that time was of the essence, and even if prepaid royalties were not a recognized method of risk allocation in the coal industry, the clause at issue here differs significantly in that these Defendants will receive dollar-for-dollar credit against their future coal production.

The Defendants next invoke two out-of-state cases, neither of which remotely involves a royalty. The Plaintiff in *Banc of Am. Leasing & Capital, LLC v. Walker Aircraft, LLC* sought to

accelerate the indebtedness owed under a note secured by an airplane. *See* No. 09-cv-1277, 2009 WL 3283885 (D. Minn. Oct. 9, 2009). The district court's analysis rings true: "the enumeration of specific events of default that could trigger acceleration illustrates that the provision is not triggered by a breach of simply any term in the agreement, but rather by *conditions agreed upon ahead of time by the parties as constituting material changes*." *Id.* at *2 (emphasis added). The court entered summary judgment in favor of the plaintiff, concluding that the acceleration provisions were not punitive and were fully enforceable. *See id.* If *Walker Aircraft* has any application here, it reinforces the reasonableness of the parties' decision that certain specified conditions would accelerate the Defendants' royalty obligation.

Finally, the Defendants look to a New York case which involved neither an acceleration clause nor a royalty. *See ING Real Estate Fin. (USA) LLC v. Park Ave. Hotel Acquisition LLC*, 2010 WL 653972, 26 Misc. 3d 1226, 907 N.Y.S.2d 437 (Sup. Ct. 2010). The Plaintiff in *ING Real Estate* sought to hold several guarantors personally liable for the breach of a credit agreement concerning demolition and construction on a valuable piece of New York City real estate. The contracts, however, included a notice and cure period of which the guarantors had availed themselves. *See id.* at *4-5 (discussing notice and cure). On those facts, the Court applied the straightforward contractual language and declined to hold the guarantors personally liable.

Southern Coal Corporation's guaranty contains no provision for notice and cure. *See* ECF No. 1-3. In fact, Southern Coal specifically agreed to "waive[] all setoffs and counterclaims and all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Agreement and of the existence, creation, or incurring of new or additional indebtedness." *Id.* at ¶2(d). In further contrast to *ING*

*Real Estate*, Southern Coal agreed that its obligations would be "unconditional, irrespective of . . . any other circumstance which might otherwise constitute or provide a basis for the legal or equitable discharge of or any defense for [Southern Coal Corporation]." *Id.* at ¶2(a). The *ING Real Estate* decision was correct in its interpretation and application of the contracts negotiated by the parties to that case. This Court must similarly enforce the agreements negotiated by these parties, in this case. Southern Coal Corporation has "UNCONDITIONALLY, IRREVOCABLY, AND ABSOLUTELY GUARANTEE[D]" the performance of Tams Management, and has affirmatively waived any defenses it might have to that obligation. *Id*. at ¶2 (emphasis in original). No legal authority provided by the Defendants supports treating an accelerated royalty as punitive liquidated damages. To do so would relieve the Defendants of business risks which they willingly assumed and would be inconsistent with longstanding West Virginia precedent.

### D. Conclusion

"A valid and enforceable contract expressing the intent of the parties will be applied and enforced according to such intent, and without resort to matters extrinsic to such contract." *Babcock*, 37 S.E.2d 519 at Syl. Pt. 1. Prepaid royalties have a long and well-recognized history in West Virginia, and play an important role in how contracting parties allocate business risks. Controlling precedent requires the conclusion that these royalties are not punitive. There is no basis in fact or law to disregard the parties' unambiguous agreement, which will neither punish the Defendants nor create a windfall for the Plaintiff. The Defendants' Motion for Summary Judgment must be denied.

                                              Thomas K. Lampert, as Trustee for the
                                              Thomas K. Lampert Irrevocable Trust,
                                              By Counsel

/s/ Isaac R. Forman
Brian A. Glasser (WV Bar #6597)
Russell M. Soloway (Admitted *Pro Hac Vice*)
Isaac R. Forman (WV Bar #11668)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
bglasser@baileyglasser.com
rsoloway@baileyglasser.com
iforman@baileyglasser.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**THOMAS K. LAMPERT, as Trustee
for the THOMAS K. LAMPERT
IRREVOCABLE TRUST,**

      Plaintiff,                                 Civil Action No. 5:15-cv-6746

v.

**TAMS MANAGEMENT, INC.,
SOUTHERN COAL CORPORATION,**

      Defendants.

### Certificate of Service

The undersigned certifies that on December 1, 2015, the foregoing ***Response in Opposition to Defendants' Motion for Summary Judgment*** was served using the Court's CM/ECF System, which will notify the following counsel of record:

      John F. Hussell, IV
      Andrew L. Ellis
      John D. Wooten, Jr.
      Wooten, Wooten, David, Hussell & Ellis, PLLC
      P. O. Box 3971
      Charleston, West Virginia 25339

                                              */s/ Isaac R. Forman*
                                              Isaac R. Forman