IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

THOMAS K. LAMPERT,
*as Trustee for the Thomas K.*
*Lampert Irrevocable Trust*,

Plaintiff,

v.                                                              CIVIL ACTION NO.   5:15-cv-06746

TAMS MANAGEMENT, INC., and
SOUTHERN COAL CORPORATION,

Defendants.

MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Plaintiff's Motion for Summary Judgment* (Document 11) and

*Memorandum in Support* (Document 12), the *Defendants' Response in Opposition* (Document 13),

and the Plaintiff's *Reply* (Document 14.)   The Court has also reviewed the *Defendants' Motion*

*for Summary Judgment* (Document 20) and *Memorandum in Support* (Document 21), the

Plaintiff's *Response in Opposition* (Document 22), and the Defendants' *Reply* (Document 23).   In

addition, the Court has reviewed the Plaintiff's *Complaint* (Document 1), all attached exhibits, and

the Defendants' *Answer* (Document 7).   For the reasons set forth herein, the Court finds that the

*Plaintiff's Motion for Summary Judgment* should be granted, and the *Defendants' Motion for*

*Summary Judgment* denied.

1

## PROCEDURAL HISTORY

On May 26, 2015, the Plaintiff, Thomas K. Lampert, a citizen of Pennsylvania, filed his complaint in this Court. He alleged that the Defendant, Tams Management, Inc. (Tams), a West Virginia corporation, breached its obligations under a Membership Interest Purchase Agreement (MIPA), entered into by the parties on May 11, 2013.   (Pl.'s Compl., at 2-3.)   The Plaintiff sought to recover against Tams for breach of contract under West Virginia law, and also sought indemnification from Tams for "any and all losses" arising from Tams' failure to comply with the terms of the MIPA, including attorneys' fees and costs.   (*Id*. at 4.)   The Plaintiff also alleged that the Defendant, Southern Coal Corporation (Southern Coal), a Delaware corporation, had guaranteed Tams' performance of the terms of the MIPA, and was, therefore, liable for all damage claims asserted against Tams.   (*Id*.)   The Defendants jointly filed their answer on June 18, 2015. The Defendants denied any liability to the Plaintiff, and asserted eleven affirmative defenses, including, that the Plaintiff was barred from recovery under the equitable doctrine of laches, by a mutual mistake among the parties, and because "uncontrollable circumstances rendered Defendants' performance impossible."   (Def. Answer, at 1-5.)

The Plaintiff moved for summary judgment on all claims on August 6, 2015.   The Defendants' response was not filed until August 27, 2015, and was, therefore, untimely under Local Rule of Civil Procedure 7.1(a)(7).   The Plaintiff nevertheless timely filed a reply on September 3, 2015.   On November 17, 2015, the Defendant filed its own motion for summary judgment.   The Plaintiff responded on December 1, 2015, and the Defendant replied on December 8, 2015.   The respective motions for summary judgment are ripe for review.

## STATEMENT OF FACTS

The relevant facts in this case are undisputed.   On March 11, 2013, the Plaintiff, a landowner in Raleigh County, West Virginia, executed the MIPA with Tams.   (MIPA, att'd as Ex. A to Pl.'s Mot. for Summ. J., at 1.)   The focus of the agreement was the Plaintiff's interest in the Three Marie Mine, located in the Slab Fork District of Raleigh County, West Virginia. (*Id*.) Under the terms of the MIPA, Tams agreed to acquire all of the Plaintiff's interest in the mine, and agreed to grant to the Plaintiff a first lien pledge and security interest in the Mine after closing, as well as payment of an Overriding Royalty. (*Id*.)   Southern Coal agreed to "irrevocably and unconditionally guarantee" Tams' performance of all the "terms and conditions" of the MIPA, as well as Tams' payment of the Overriding Royalty.   (*Id*.)

Section 2.05(a) of the MIPA, "Post-Closing Covenants," is of particular relevance to this case.   Under this provision, Tams agreed to "promptly and diligently pursue approval" of mining Permit Transfer Forms (Permits) from the West Virginia Department of Environmental Protection (WVDEP.) (*Id*. at 7.)   The MIPA stated that in "determining whether [TAMS] has satisfied the Purchaser Permit Approval Obligation, time shall be of the essence." (*Id*.)   The MIPA stipulated that if Tams did not "satisfy the Purchaser Permit Approval Obligation upon the expiration of ninety (90) calendar days" following closing of the transaction, Tams was obligated to pay the Plaintiff an Accelerated Royalty Amount, as set forth in the Overriding Royalty Agreement. (*Id*.) The Overriding Royalty Agreement affirmed Tams' desire to acquire the mine, as well as two WVDEP permits, and set forth a royalty payable by Tams to the Plaintiff of $4.00 for each ton of coal mined, for the first 500,000 tons of coal mined and sold, and a $1.00 royalty for each ton thereafter.   (Overriding Royalty Agreement, at 1-2, att'd as Ex. B to Pl.'s Mot. for Summ. J.)

The Overriding Royalty Agreement also included an "Acceleration" provision, under which Tams agreed to pay the Plaintiff $2,000,000 in the event that it did not satisfy the Purchaser Permit Approval Obligation within 90 days of the closing.   (*Id*. at 3.)

As part of the transaction, Southern Coal entered into a Guaranty Agreement in favor of the Plaintiff.   (Guaranty Agreement, att'd as Ex. C. to Pl.'s Mot. for Summ. J.)   Under the terms of the Guaranty Agreement, Southern Coal agreed to "UNCONDITIONALLY, IRREVOCABLY AND ABSOLUTELY GUARANTEE[]" the performance of all obligations assumed by Tams under the MIPA, "including, but not limited to, the due and punctual payment of overriding royalty payments owed by [Tams]" under the Overriding Royalty Agreement.   (*Id*. at 4.)

The MIPA, along with the Overriding Royalty Agreement and the Guaranty Agreement, were executed by the Plaintiff, Tams and Southern Coal on May 11, 2013.   Subsequently, Tams failed to obtain the required permits within 90 days, as required by the MIPA and the Overriding Royalty Agreement.   (Pl.s' Mem. in Supp. of Mot. for Summ. J., at 1.)   Under the terms of the MIPA and the Overriding Royalty Agreement, both permits were required to be transferred to Tams on or around June 15, 2013.   Instead, WV DEP Permit #S301411 was not transferred until July 15, 2013.   (Approval Notice, att'd as Ex. D to Pl.'s Mot. for Summ. J., at 1.)   Meanwhile, the second permit, WV DEP Permit #WV1026488, was not transferred until August 12, 2013. (Letter of Transfer, att'd as Ex. E to Pl.'s Mot. for Summ J., at 1.)

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

4

56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.  *Hoschar*, 739 F.3d at 169.   However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."  *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar.

31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).   If

disputes over a material fact exist that "can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party," summary judgment is inappropriate.   *Anderson*,

477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish

the existence of an element essential to that party's case," then summary judgment should be

granted because "a complete failure of proof concerning an essential element . . . necessarily

renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the

same standard of review.   *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D.

W. Va. July 21, 2008) (Johnston, J.) *aff'd*, 474 F. App'x 101 (4th Cir. 2012).   Courts "must review

each motion separately on its own merits to determine whether either of the parties deserves

judgment as a matter of law," resolving factual disputes and drawing inferences for the non-

moving party as to each motion.   *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)

(internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc.*

*v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

Summary judgment in this case turns on one issue: the proper construction of the

Overriding Royalty Agreement, and the Acceleration Clause contained therein.   In West Virginia,

a written contract "which expresses the intent of the parties in plain and unambiguous language is

not subject to judicial construction or interpretation but will be applied and enforced according to

such intent."   Syl. Pt. 4, *Zimmerer v. Romano*, 223 W.Va. 769, 679 S.E. 2d 601 (2009).

Reviewing the text of the MIPA, the Overriding Royalty Agreement, and the Guaranty Agreement,

the Court finds no ambiguity.   The terms of these documents, read together, are clear.   In order to acquire the Plaintiff's rights to certain mining properties in West Virginia, Tams agreed to pay certain royalties on each ton of coal mined from the property.   Southern Coal agreed to guarantee that Tams performed these contractual obligations.   In order to encourage Tams to quickly obtain the permits, the parties negotiated a provision whereby, if Tams failed to obtain these permits within 90 days, Tams would be required to accelerate the royalty payments by immediately paying the Plaintiff $2,000,000.   Under the terms of the Guaranty Agreement, Southern Coal was obligated to make this payment if Tams failed to do so.   The only issue for the Court to determine, therefore, is whether the Overriding Royalty Agreement, and the acceleration clause therein, are enforceable under West Virginia law.

The parties offer conflicting views of the Overriding Royalty Agreement, and the acceleration clause contained therein.   According to the Plaintiff, these provisions include a traditional royalty, used by sophisticated parties to allocate risk in an "industry filled with uncertainty."   (Pl.'s Resp. in Opp. to Def. Mot. for Summ. J., at 2.)   The Defendants, by contrast, argue that the Court should treat the provisions as a liquidated damages clause.   (Def. Mem. in Supp. of Mot. for Summ. J., at 1-2.)

The proper starting point for resolving this dispute is the text of the Overriding Royalty Agreement.   The agreement requires Tams to pay an overriding royalty on all coal mined from the Three Marie Mine of $4.00 per ton for the first 500,000 tons of coal,[1] and $1.00 per ton thereafter.   (Overriding Royalty Agreement, at 2, att'd as Ex. B to Pl.s' Mot. for Summ. J.)   The agreement requires Tams to pay this amount before the 25th day of each calendar month, along

---

[1]   The Court notes that the total estimated royalty for the first 500,000 tons of coal mined from the property, at $4.00 per ton, is $2 million, or the amount at issue in this case.

with a statement showing the number of tons of coal mined and sold during the preceding calendar month. (*Id*.)   The acceleration provision at the center of this dispute states that Tams "acknowledges that its obligations under this Agreement shall accelerate under the occurrence of any of the following acts or omissions …

> (a) Acceleration of Initial Royalty Amount.   Tams shall promptly pay Two Million Dollars ($2,000,000) in one lump sum, in lieu of the Initial Royalty Amount, to [the Plaintiff] … in the event that one or more of the following acts or omissions occur: (i) Tams does not satisfy the Purchaser Permit Approval Obligation (as defined under the Purchaser Agreement) within ninety (90) days hereof …"

*Id*. at 3.   Thus, the acceleration clause unambiguously provides that, in the event Tams failed to procure the permits referenced in the Purchaser Permit Approval Obligation within 90 days, which Tams indisputably failed to do, Tams and its guarantor, Southern Coal, would be required to pay in full the first $2,000,000 in royalty payments due to the Plaintiff.

The Plaintiff, quite reasonably, argues that the Court should construe this provision as a royalty, rather than a liquidated damages clause.   The Plaintiff notes that "[c]ourts of West Virginia, along with the Fourth Circuit … have never treated a royalty as liquidated damages." (Pl.'s Reply in Supp. of Mot. for Summ. J., at 1-2.)   The Supreme Court of Appeals of West Virginia has defined a mining royalty as "a payment to the owner of minerals in place for the privilege of removing and appropriating the same, and is ordinarily based upon the quantity of material produced."   *Bethlehem Steel Corp. v. Shonk Land Co.*, 288 S.E.2d 139, 150 (W.Va. 1982), quoting *Koppers Coal Co. v. Alderson*, 26 S.E.2d 226 (W.Va. 1943).   In this case, Tams agreed to pay the Plaintiff a royalty per ton of coal mined and sold from the premises, and to accelerate payment of a portion of that royalty in the event that Tams failed to procure the permits necessary to mine the property within a fixed timeline.   The Court finds that the relevant provisions of the Overriding Royalty Agreement clearly constitute a royalty.

8

The Plaintiff is also correct that West Virginia courts have routinely enforced contractual royalty provisions in the context of the coal industry.   *See, e.g.*, *Anderson v. Nichols*, 359 S.E.2d 117, 120 (W.Va. 1987) (affirming award of summary judgment for arbitrator's award of royalty payment under coal lease); *Babcocke Coal & Coke Co. v. Brackens Creek Coal Land Co.*, 37 S.E.2d 519, 524 (W.Va. 1946) (enforcing royalty provisions of contract and declining to rescind the same despite difficulties in performance); *Flavelle v. Red Jacket Consol. Coal & Coke Co.* , 96 S.E. 600, 605 (W.Va. 1918) ("… if a lessee covenants to … pay a definite rental or royalty, in the event he fails to do so and he is not exonerated therefrom by some other stipulation of the contract, he will generally be held to a strict performance of that covenant"); *Lawson, et ux. v. Williamson Coal & Coke Co.*, 57 S.E. 258, 260-61 (W.Va. 1907) (enforcing royalty provision despite defendant's failure to commence mining).

The Fourth Circuit, as the Plaintiff noted, has adopted a similar approach.   In *Orlandi v. Goodell*, 760 F.2d 78, 82 (4th Cir. 1985), the Fourth Circuit found that a royalty payment was enforceable under the "clear terms of the contract" negotiated by the parties, despite the defendant's claim of mutual mistake.   *Orlandi*, 760 F.2d at 82.   In reaching this conclusion, the Fourth Circuit relied on *Babcocke Coal*, where the West Virginia Court of Appeals stated that "it is of frequent occurrence in the business world that a party to a contract finds that its performance is onerous and unprofitable; nevertheless, good faith and fair dealing call for performance."   *Id*., quoting *Babcocke*, 37 S.E.2d at 522.

The Defendants attempt to mitigate this adverse precedent by arguing that these cases do not address the specific situation at issue here, involving the pairing of a royalty provision with an acceleration clause.   (Def. Mem. in Supp. of Mot. for Summ. J., at 5.)   The Defendants argue that

9

the acceleration clause transforms an ordinary royalty agreement into a contractual penalty, with

the potential to inflict severe harm upon the Defendants for an insignificant breach of contract

which resulted in no financial loss to the Plaintiff.   (*Id*.)   Thus, the Defendants argue that the case

law cited by the Plaintiff is inapplicable.   (*Id*.)   The Defendants then point the Court to case law

from other jurisdictions, arguing that acceleration clauses which require a party to pay a significant

penalty for a trivial breach of contract are unenforceable.   (*Id*.)

In particular, the Defendants emphasize *Banc of America Leasing & Capital, LLC v.*

*Walker Aircraft, LLC*, 2009 WL 3283885 (D. Minn. Oct. 9, 2009).   In that case, the district court

evaluated a claim for breach of contract by a lender, where the loan agreements and promissory

notes contained an acceleration clause which would take effect in the event of one of several

default events.   *Walker Aircraft*, 2009 WL 3283885, at *1.   The court applied a New York rule

that "if a[n] acceleration clause is intended by the parties to operate in lieu of damages, it is

enforceable; if it is intended to operate as a means to compel performance, it is an unenforceable

penalty."   *Id*., citing *Rattigan v. Commodore Int'l Ltd*., 739 F.Supp. 167, 171 (S.D.N.Y. 1990).

Under the same rule, the court noted that "an acceleration clause is penal if 'it can be triggered for

any breach of the contract's terms, whether serious or trivial, because under such a contract the

amount lost by the breaching party for non-compliance with a minor term is disproportionate'" to

the harm accrued.   *Id*., quoting *Rattigan*, 739 F.Supp. at 171.   The court found that because the

acceleration clauses at issue required payment of "outstanding principal, interest, late fees, and

pre-payment charges" upon default, the clauses were "not penal," but rather, compensated the

Plaintiff for the value of the loan.   *Id*.   The Defendants argue that under the New York rule

applied in *Rattigan*, the acceleration clause in this case *is* penal, because a trivial breach of contract

10

– the Defendants' failure to comply with the Purchaser Permit Approval Obligation – results in a disproportionate penalty.   (Def. Mem. in Supp. of Mot. for Summ. J., at 5.)

The Court cannot agree.   Here, the parties negotiated a straightforward royalty provision as part of a mining contract, and Tams agreed that if it was unable to obtain certain essential permits within 90 days of the execution of the agreement, it would be immediately liable to the Plaintiff for a significant percentage of the total royalty amount: $2,000,000.   Southern Coal agreed to guarantee Tams' adherence to these provisions.   Tams breached this obligation by failing to obtain the permits within 90 days.   Tams and Southern Coal are thereby liable to the Plaintiff under the Overriding Royalty Agreement and the unambiguous acceleration clause contained therein.   The Defendants' reliance upon New York law, which is not binding on the Court in this case, does not persuade the Court that this agreement is unenforceable.   As an initial matter, the Court has identified no such rule in West Virginia law.   Furthermore, even if the New York rule governed actions for breach of contract under West Virginia law in this context, the Plaintiff would nonetheless be able to recover under the acceleration clause.   The New York rule focuses on preventing disproportionate financial penalties triggered by minor breaches of contract. There is no such disproportionate penalty here.   The acceleration clause does not *penalize* Tams and Southern Coal, but rather, it allows the Plaintiff to claim royalties *it otherwise may have received* under the terms of the MIPA on an accelerated timetable.[2]   The acceleration clause of

---

2  The text of the Overriding Royalty Agreement supports this conclusion.   As part of the agreement, Tams agreed to pay the Plaintiff $4.00 per ton for the first 500,000 tons of coal mined and sold from the relevant mine, for a total royalty of $2,000,000 for the first 500,000 tons of coal. This royalty is referred to as the "Initial Royalty Amount." (Overriding Royalty Agreement, at 2, att'd as Ex. B to Pl.'s Mot. for Summ. J.)   This same sum, $2,000,000, was owed to the Plaintiff if Tams failed to comply with the Purchaser Permit Approval Obligation. This royalty is referred to as "Accelerated Royalty Payment I."   (*Id*.)   The language of the acceleration clause states that "in the event that the Accelerated Royalty Payments become due … after coal mining has commenced …, Tams may reduce the Accelerated Royalty Payment I … by the amount of Initial Royalty Amount paid."   (*Id*. at 3.) If the acceleration clause were purely punitive, and designed to "compel performance" in such a way as to violate the New York rule set

11

the Overriding Royalty Agreement, and the payments owed to the Plaintiff for Tams' breach of this provision, are valid under West Virginia law and enforceable by this Court.

The Defendants also claim that the acceleration clause is an unenforceable liquidated damages provision which operates as a contractual penalty, in violation of West Virginia law.   It is a fundamental principle of contract law that parties have a "broad right to stipulate in their agreement the amount of damages recoverable in the event of a breach," and courts generally enforce such agreements.   24 Williston on Contracts §65:1 (4th ed.)   The exceptions are when such an agreement is unconscionable, an unlawful penalty, or otherwise violates public policy. *Id*.   The Supreme Court has observed that courts should give effect to liquidated damages provisions unless the damages are "disproportionate to the amount of property loss, as to show that compensation was not the object aimed at or as to imply fraud, mistake, circumvention, or oppression."   *Wise v. United States*, 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647 (1919). Absent such evidence, "there is no sound reason why persons competent and free to contract may not agree upon this subject as fully as upon any other, or why their agreement … should not be enforced."   *Id*.

In West Virginia, parties may properly contract for liquidated damages where the damages are "uncertain and not readily capable of ascertainment in amount by any known or safe rule" or where "from the nature of the case and tenor of the agreement, it is apparent that the damages have already been the subject of actual fair estimate and adjustment between the parties."   *Stonebraker v. Zinn*, 286 S.E.2d 911, 914 (W.Va. 1982), quoting Syl. Pt. 1, *Charleston Lumber Co. v. Friedman*, 61 S.E. 815 (W.Va. 1908).   However, such clauses become an unenforceable penalty

---

forth in *Walker Aircraft*, the clause would not permit Tams to reduce the accelerated royalty payment by offsetting any initial royalty payments made to the Plaintiff.

where the amount is "grossly disproportional in comparison to the damages actually incurred." *Id.*, citing *Yost v. Wills*, 102 S.E. 728 (W.Va. 1920); *Beury v. Fay*, 80 S.E. 777 (W.Va. 1914).   The Defendants argue that the Overriding Royalty Agreement is such a "penalty," because the "amount is grossly disproportional in comparison to the damages actually incurred."   (Def. Mem. in Supp. of Mot. for Summ. J., at 2-3, citing *Gateway Town Centre, LLC v. First United Bank & Trust*, 2011 WL 3877010, at *17 (N.D.W.Va. Sept. 2, 2011).)

The Court disagrees with the Defendants that the Overriding Royalty Agreement, and the acceleration clause contained therein, are properly construed as liquidated damages provisions. The Defendants have produced no case law wherein the courts of this District, the Fourth Circuit, or of West Virginia, have refashioned a royalty agreement, an acceleration clause, or any combination thereof into a liquidated damages provision.   While the labels affixed to particular contractual provisions are not necessarily dispositive of the nature of the provision, under West Virginia law, courts may not haphazardly refashion contractual provisions merely because a freely negotiated contract becomes onerous to a particular party.   This is particularly true where, as here, the intent of the parties is expressed in clear and unambiguous language.   A written contract "which expresses the intent of the parties in plain and unambiguous language" must be "applied and enforced according to such intent."   Syl. Pt. 4, *Zimmerer v. Romano*, 223 W.Va. 769, 679 S.E. 2d 601 (2009).   Here, the unmistakable intent of the parties in agreeing to the Overriding Royalty Agreement was to contract for royalties, not liquidated damages, in the event of a breach. The acceleration clause of the Overriding Royalty Agreement expedites the timeline under which the Plaintiff receives these royalties in the event Tams failed to acquire permits required under the MIPA.   The acceleration clause, therefore, gives meaning and substance to the assertions of the

13

parties that "time shall be of the essence" in complying with the Purchaser Permit Approval

Obligation, and that Tams' failure to comply with the Purchase Permit Approval would be a

"material event of default" under the MIPA.   (MIPA, at 7, att'd as Ex. A to Pl.'s Mot. for Summ.

J.)   The Court declines the opportunity to override such clear intent in order to fashion a remedy

unknown in West Virginia law.

### CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the

*Plaintiff's Motion for Summary Judgment* (Document 11) be **GRANTED** and that the *Defendants'*

*Motion for Summary Judgment* (Document 20) be **DENIED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record

and to any unrepresented party.


ENTER:        March 11, 2016


IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA


14