**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

**THOMAS K. LAMPERT, as Trustee
for the THOMAS K. LAMPERT
IRREVOCABLE TRUST,**

      **Plaintiff,**                                **Civil Action No. 5:15-cv-6746**

**v.**

**TAMS MANAGEMENT, INC.,
SOUTHERN COAL CORPORATION,**

      **Defendants.**

**Response in Opposition to Defendants' Motion to Alter or Amend Judgment and
Motion to Certify Questions of Law to the Supreme Court of Appeals of West Virginia**

Rule 59 does not permit a party to raise arguments or legal theories which could, and should, have been raised prior to the entry of judgment. And while every one of the Defendants' arguments, legal theories, and cases could have been raised in a timely manner, their motion offers no explanation for the failure to do so. The Defendants first invoke the unconscionability doctrine, which cannot be used to invalidate a commercial transaction involving sophisticated parties. Next, the Defendants point to previously unmentioned and unpersuasive cases from other jurisdictions, in the hope that this Court will simply reverse its Memorandum Opinion and Order of May 11, 2016. Finally, and in the alternative, the Defendants seek a second bite at the apple, making an unprecedented and impermissible post-judgment request for certification to the Supreme Court of Appeals of West Virginia. For these reasons, the Defendants' motion must be denied.

**Legal Standard**

A Rule 59(e) motion may be granted in order to (1) accommodate an intervening change in controlling law; (2) account for previously unavailable evidence; or (3) correct a clear error of law or to prevent manifest injustice.  *See Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002). "[B]ecause of the narrow purposes for which they are intended, Rule 59(e) motions are typically denied." *Woodrum v. Thomas Mem'l Hosp. Found., Inc.*, 196 F.R.D. 350, 351 (S.D.W. Va. 1999) (internal citations omitted).

The Fourth Circuit Court of Appeals has warned that Rule 59(e) "may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may [it] be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *Holland v. Big Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("[A]n issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised."). A court's decision not to entertain arguments which were not previously raised will be affirmed, absent an abuse of discretion. *See Holland v. Big River Minerals Corp.*, 181 F. 3d 597, 605 (4th Cir. 1999).

**Argument**

The Defendants cannot use Rule 59(e) to raise arguments that could have been raised prior to judgment, or to assert new legal theories that they failed to address in the first instance. *See Pac. Ins. Co.*, 148 F.3d at 403; *Freedman v. America Online, Inc.*, 329 F. Supp. 2d 745, 748 (E.D. Va. 2004) (Rejecting reconsideration motion that raised "arguments which could have been raised prior to judgment or in the course of the summary judgment hearing."); *Weyerhaeuser Corp. v. Koppers Co., Inc.*, 771 F. Supp 1406, 1419 (D. Md. 1991) ("A Rule 59(e)

2

motion cannot be used to raise arguments which could, and should, have been made before the summary judgment issued." (internal quotation marks omitted)).

The Defendants' Rule 59(e) motion raises three issues: (1) that the accelerated royalty is unconscionable under West Virginia law; (2) that the Court's Memorandum Opinion and Order of March 11, 2016 was clearly erroneous and would work a manifest injustice; and (3) that the case presents novel or complicated questions justifying certification to the Supreme Court of Appeals of West Virginia. The first and third contentions could have been raised at the summary judgment stage, but were not. Only the second contention, a true request for reconsideration, is appropriately reviewable under Rule 59(e). Because the Court has discretion to excuse the Defendants' lack of timeliness, each contention is addressed below on its merits.

**A.  The accelerated royalty is not unconscionable.**

As part of their years-long effort to ignore the unambiguous deal they struck, the Defendants now invoke the doctrine of unconscionability. Unconscionability was not asserted as an affirmative defense or raised in the cross-motions for summary judgment, and has therefore been waived. Nevertheless, the doctrine has no application in this case.

When examining a contract for potential unconscionability, the Court must conduct an individualized analysis which "tak[es] into consideration all of the facts and considerations of a particular case." *Montgomery v. Credit One Bank, NA*, 848 F. Supp. 2d 601, 605 (S.D. W. Va. 2012) (internal quotation marks omitted). The inquiry "must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in a contract." *Id.* A party invoking unconscionability must demonstrate both procedural and substantive unconscionability. *Id.* Procedural unconscionability requires an examination of any inequities, improprieties, or unfairness in the

bargaining process and formation of the contract. *Id.* at 606. Typical factors supporting procedural unconscionability are the existence of an adhesion contract, a party's illiteracy, lack of sophistication, or the presence of hidden or unduly complex provisions. *Id.* Substantive unconscionability looks to "unfairness in the contract itself and whether a contract term . . . will have an overly harsh effect on the disadvantaged party." *Id.*

Commercial transactions, freely negotiated between sophisticated parties, cannot be invalidated based on the doctrine of unconscionability. Perhaps conscious of their overreach, the Defendants do not even discuss the factors necessary to establish unconscionability. And while the Defendants' owners may plead ignorance of the day-to-day operations of many of their mining businesses,[1] the Defendants have never asserted that James C. Justice III is illiterate, unsophisticated, or incapable of understanding the contract that he negotiated and signed.

Having ignored their burden of establishing procedural unconscionability, the Defendants merely complain that their contract is unconscionable because it creates a $2,000,000 "windfall" for the plaintiff. This issue of a "windfall" was discussed at length in the summary judgment briefing and resolved by this Court's succinct explanation that "[t]he acceleration clause does not *penalize* Tams and Southern Coal, but rather, it allows the Plaintiff to claim royalties *it otherwise may have received* under the terms of the [contract] on an accelerated timetable." ECF No. 28, at 11 (emphasis in original). Despite their pleas to the contrary, when it comes to sophisticated business entities engaged in complicated commercial transactions, there is absolutely no such

---

[1] Through their recent filings in another case, the Defendants' owners and operators have claimed a lack of knowledge concerning the day-to-day affairs of several of their mining businesses.  *See* ECF No. 71, *James River Equip., Virginia, LLC v. Justice Energy Company, Inc.*, No. 5:13-cv-28160 (S.D. W. Va.).  By contrast, James C. Justice III was personally involved in the negotiation and execution of the transaction that is at issue in this case.

4

thing as a "trend in contract law shifting away from strict construction and in the direction of fairness and equity." ECF No. 35, at 3.

Simply put, there is nothing unfair, procedurally or substantively, about the Defendants' desire to purchase the Plaintiff's coal reserves and to pay a substantial portion of the price in the form of a royalty. Nor is there anything unfair, procedurally or substantively, about the Defendants' agreement to prepay a portion of that royalty if they failed to transfer the essential mining permits in a timely manner. The Defendants' failure to obtain timely permit transfers does not entitle the Plaintiff to any windfall. It merely triggers prepayment of the initial $2,000,000 royalty which the Defendants may credit against future coal production, thereby shifting future mining risk to the Defendants in a manner that is consistent with settled West Virginia law. Since the Defendants' motion brings to bear no new factual or legal issues, it should be denied.

**B. The cross-motions for summary judgment were resolved correctly.**

Next, Defendants seek reversal of the Court's March 11, 2016 Memorandum Opinion and Order, reiterating their view that the accelerated royalty constitutes an unenforceable penalty. In support of reconsideration, the Defendants cite three new cases. None of the three involves coal. None of the three involves a mineral royalty. And none of the three is from West Virginia, or even from a state within the Fourth Circuit. These new authorities are presented as a plea for the Court to exercise its "equitable powers" and join "a trend in contract law throughout the United States to restrict unbridled freedom of contract." ECF No. 35, at 4. This sort of last-minute plea for equitable relief is not an attempt to correct a "clear error of law or to prevent manifest injustice." *Hill v. Braxton*, 277 F.3d at 708.

5

The first two cases involve equitable extensions of commercial leases, where eviction would have resulted in forfeiture. Neither had anything to do with coal mining, royalty payments, or acceleration clauses. *See Aickin v. Ocean View Investments Co.*, 935 P.2d 992 (Haw. 1997) (avoiding potential forfeiture and allowing equitable extension of commercial lease where evicted lessee took on debt in order to finance improvements); *Foundation Dev. Corp. v. Loehmann's, Inc.*, 788 P.2d 1189 (Ariz. 1990) (preventing eviction where common area charge in shopping center lease was delayed by good faith dispute over balance, and lease was silent as to timing of payment). This case is easily distinguishable; the overriding royalty does not to expand, by one cent, the Defendants' total royalty obligations.  It simply shifts future mining risk onto the Defendants in a manner that is consistent with settled law.  *See* ECF No. 11-2, at ¶3 (accelerated payment is "in lieu of" the initial royalty, and the Defendants are entitled to a reduction for any previous royalty payments).

Next, the Defendants devote a substantial portion of their brief to the discussion of a Rhode Island case involving a disputed donut shop franchise agreement. *See Honey Dew Assoc's, Inc. v. M&K Food Corp.*, 81 F. Supp. 2d 352 (D.R.I 2000) *vacated and remanded*, 241 F.3d 23 (1st Cir. 2001). In that case, the district court declined to enforce the damages provision contained in a donut shop franchise agreement, or to award attorneys' fees to the non-breaching party, after concluding that enforcement of the agreement would be punitive. But the Defendants fail to acknowledge that the district court's decision was vacated by the First Circuit Court of Appeals, which explained in no uncertain terms, that "[b]oth of these rulings were erroneous." *Honey Dew*, 241 F.3d at 26.

Even if the district court's decision had precedential value, it would only serve to support the Plaintiff. The court's primary concern was that the damages provision failed to reduce

franchise fees to account for the franchisor's avoided cost of "supervis[ing] the operation of the shop and regularly send[ing] personnel to Rhode Island to ensure that the [franchisee] complies with the Franchise Agreement." *Honey Dew*, 81 F. Supp. 2d 352, 358. That concern is not present here, where the Defendants are obliged to prepay a royalty and are entitled to credit their prepayment against future coal production.

This Court's Memorandum Opinion and Order explained that the relevant contractual provisions "clearly constitute a royalty." *Id.* at 8. The Court observed that "West Virginia courts have routinely enforced contractual royalty provisions in the context of the coal industry," and that parties will not be relieved from their royalty obligations simply because they may perceive performance as "onerous and unprofitable." *Id.* at 9. Now, despite the benefit of reviewing this Court's Memorandum Opinion and Order, the Defendants *still* "have produced no case law wherein the courts of this District, the Fourth Circuit, or of West Virginia, have refashioned a royalty agreement, an acceleration clause, or any combination thereof into a liquidated damages provision." *Id.* at 13. The issues raised at summary judgment were correctly decided.  The Defendants' request for reconsideration must be denied.

**C. Certifying this case to the Supreme Court of Appeals of West Virginia is unnecessary and improper.**

Having taken their chances at summary judgment, the Defendants belatedly suggest that the case presents questions appropriate for certification to the Supreme Court of Appeals of West Virginia. A request for certification would have undercut their prior litigation position, and the Defendants made a strategic decision not to request certification prior to summary judgment. Now, because they failed to raise the issue prior to the entry of judgment, the Defendants' request for certification is not cognizable on a Rule 59(e) motion.

7

First, the certification statute limits the procedure to only those legal questions which "may be determinative in a *pending cause.*" W. Va. Code § 51-1A-3 (emphasis added). By limiting certification to *pending* cases, the statute forecloses the possibility of making post-judgment certification requests in order to obtain a second bite at the apple.

Second, the Defendants' certification request fails on the merits. Certification is appropriate only where which "there is no controlling appellate decision, constitutional provision or statute of this state." *Id.* The summary judgment briefing in this case is replete with reference to controlling precedent, both state and federal, compelling the conclusion that coal royalties, prepaid or otherwise, are not liquidated damages, and that a party who agrees to prepay a coal royalty is deemed to bear the risk that future production might be delayed, or might not occur at all. *See Orlandi v. Goodell*, 760 F.2d 78, 81 (4th Cir. 1985) (requiring party to pay advance royalties though no relationship exists between payment schedule and actual mining, describing prepaid royalty as "an absolute undertaking," and the party is "required to pay the royalty and taxes even though he never entered upon the land"); *Lawson v. Williamson Coal & Coke Co*., 61 W. Va. 669, 57 S.E. 258 (1907)); *Babcock Coal & Coke Co. v. Brackens Creek Coal Land Co.*, 128 W. Va. 676, 683, 37 S.E.2d 519, 523 (1946) (describing allocation of risk in prepaid royalty). In light of this clear precedent, the Court correctly explained that there is no basis under West Virginia law to "refashion[] a royalty agreement, an acceleration clause, or any combination thereof into a liquidated damages provision."  ECF No. 28, at 13.

Even if the contract did involve liquidated damages, it would not automatically be unenforceable. Rather, the enforceability of a liquidated damages provision requires the presentation of considerable evidence. *See Wheeling Clinic v. Van Pelt*, 192 W. Va. 620, 453 S.E.2d 603 (1994) (describing conflicting trial testimony on liquidated damages); *Gateway*

8

*Towne Centre, LLC v. First United Bank and Trust*, No. 1:09-cv-127, 2011 WL 3877010 (N.D.

W. Va. Sept. 2, 2011) (reviewing affidavits and declarations of negotiating parties).

The Defendants have never produced, or even referenced, any evidence concerning the

negotiation, formation, or their efforts to perform under the contract.[2] Because certification

requires "a sufficiently precise and undisputed factual record on which the legal issues can be

determined," the Defendants cannot ignore discovery and then be permitted to obtain

certification of a question whose answer could turn entirely on evidence which they never

produced. *Zalenka v. City of Weirton*, 208 W. Va. 243, 245, 539 S.E.2d 750, 752 (2000).

Defendants' certification request necessarily fails. The pertinent statute is limited to

*pending* cases, a clear acknowledgment that certification cannot be raised in a Rule 59 motion

seeking a second bite at the apple. There is no shortage of controlling state and federal authority

which mandated the outcome in this case. And assuming that the case involved liquidated

damages — as opposed to a royalty — the Defendants cannot be permitted to obtain certification

after withholding potentially dispositive evidence on the question that they seek to certify.

Defendants' request for certification must be denied.

## Conclusion

The parties to this case entered into a valid and enforceable contract that unambiguously

expressed their intentions. The Defendants, owned and controlled by James C. Justice II, have

never disputed the plain meaning of the documents. Instead they seek special treatment, pleading

---

[2] Through an independent investigation, Plaintiff's counsel uncovered evidence indicating that James C. Justice III personally offered the acceleration provision as an enticement in order to persuade the Plaintiff to close. *See* Ex. A. Counsel also uncovered evidence indicating that the breach is attributable to the Defendants' own failure to submit a completed application in a timely manner, and not to any governmental delays. *See* Ex. B (transfer application resubmitted six times in response to DEP correction requests).

that it would be unfair to hold them to the terms of a coal royalty agreement which they freely

negotiated. West Virginia law treats contracts and parties the same, whether they are

corporations, billionaires, politicians, or ordinary citizens.  Because this Court properly applied

the plain language of the parties' contract, the Defendants' motion must be denied.

Thomas K. Lampert, as Trustee for the
Thomas K. Lampert Irrevocable Trust,

By Counsel

/s/ Isaac R. Forman
Brian A. Glasser (WV Bar #6597)
Russell M. Soloway (Admitted *Pro Hac Vice*)
Isaac R. Forman (WV Bar #11668)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
bglasser@baileyglasser.com
rsoloway@baileyglasser.com
iforman@baileyglasser.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

**THOMAS K. LAMPERT, as Trustee**
**for the THOMAS K. LAMPERT**
**IRREVOCABLE TRUST,**

      **Plaintiff,**                         **Civil Action No. 5:15-cv-6746**

**v.**

**TAMS MANAGEMENT, INC.,**
**SOUTHERN COAL CORPORATION,**

      **Defendants.**

### Certificate of Service

The undersigned certifies that on April 22, 2016, the foregoing ***Response in Opposition to Defendants' Motion to Alter or Amend Judgment and Motion to Certify Questions of Law to the Supreme Court of Appeals of West Virginia*** was served using the Court's CM/ECF System, which will notify the following counsel of record:

        John F. Hussell, IV
        Andrew L. Ellis
        John D. Wooten, Jr.
        Wooten, Wooten, David, Hussell & Ellis, PLLC
        P. O. Box 3971
        Charleston, West Virginia 25339

                                                  */s/ Isaac R. Forman*
                                                  Isaac R. Forman